CORPORACIÓN AZUCARERA SAURÍ & SUBIRÁ, Plaintiff and Appellee, *v.* CARLOS C. CLAVELL ET UX., Defendants and Appellants; COSME IRIZARRY, Third-party Defendant-Appellee.

No. 153.   Decided March 8, 1963.

---

602

*Inés Acevedo de Campos, R. Muñoz Ramos,* and *Ariel Colón Clavell* for appellants. *Rivera Cestero & Rúa* and *C. A. Romero Barceló* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

By deed No. 67 of August 4, 1952, executed before Notary Public Leopoldo Tormes García, the partnership Clavell e Irizarry and Corporación Azucarera Saurí y Subirá, appellee herein, entered into a contract for the grinding of cane and crop-loan advances. By virtue of that contract said partnership agreed to cultivate some 300 cuerdas of sugar cane in two farms, one of which was subleased and the other leased, and to deliver the cane at the *batey* of Central Constancia, owned by appellee, during the crop seasons from 1953-54 to 1963-64, namely, during ten crop seasons. It was further agreed that during such crop seasons Central Constancia would grant a crop-loan credit up to the sum of $10,800 for each crop season, plus two credits of $1,000 each to cover interest and costs, expenses, disbursements and attorney's fees. Such credit would be guaranteed by a preferred lien on the plantations and the sugar produced by the cane in accordance with the Act on Contracts of Agricultural Advances and Grinding of Cane of March 10, 1910 (Sess. Laws, p. 119), as amended. In order to resolve the conflict between the parties in this case, it is well to make a review and subsequently an analysis of the agreements formally made by the parties in several public deeds admitted in evidence and which form part of the record.

*A.* Subparagraphs B and G of the Sixteenth clause of the deed in question provide that:

"(B) In the event of nonperformance, in the opinion of 'LA CENTRAL,' of the stipulations hereof on the part of 'EL COLONO', it is expressly agreed that 'LA CENTRAL' may enter the lands described herein and cultivate, tend and harvest the cane thereon and process them into sugar and, to that end, to use the entire equipment which 'EL COLONO', may have devoted to those purposes, and to dispose of the sugar produced and retain for itself the liquidations or the amount thereof to cover any other debt which 'EL COLONO' may owe to 'LA CENTRAL.'

"(G) During the ten crop seasons referred to in the grinding contract 'LA CENTRAL' may give to the COLONO, for the financing of the farms involved in this contract, such amounts as in its judgment may be necessary for the planting and cultivation, cutting and hauling of the cane produced by said farms and which are comprised within the quota assigned to the COLONO and which may be ground by 'LA CENTRAL'; and 'LA CENTRAL' may likewise, in the event of disability, death or absence of Cosme Irizarry, partner of the partnership CLAVELL E IRIZARRY, carry out the cultivation on all the farms which may belong at present or in the future to the partnership, for any account, at the expense of the COLONO, in connection with all of which he will deal with the other partner CARLOS C. CLAVELL; and all amounts spent by the CENTRAL in such cultivation, up to the sum of THIRTY THOUSAND DOLLARS ($30,000) in each crop season, shall be guaranteed as a preferred crop-loan credit in favor of 'LA CENTRAL' over all the canes included in these contracts until such time as 'LA CENTRAL' collects in full the principal and the interest accrued thereon at the rate agreed upon."

*B.* The Seventeenth clause provides:

"The partnership CLAVELL E IRIZARRY (EL COLONO) recognizes that Corporación Azucarera Saurí y Subirá has delivered to partner CARLOS C. CLAVELL different sums of money prior hereto which have been spent in the preparation and cultivation of the farms leased and subleased by the partnership CLAVELL E IRIZARRY to the said CARLOS C. CLAVELL, on which lands the said partnership has continued the cultivation in order to comply with the GRINDING contract with 'LA CENTRAL.' The sums thus delivered amount at present to FOURTEEN THOUSAND FIVE

HUNDRED EIGHTY-THREE DOLLARS AND SEVENTY-FIVE CENTS ($14,583.75), which debt is assumed by the partnership to complete the amount of THIRTY THOUSAND DOLLARS ($30,000), since 'LA CENTRAL' delivers to the 'COLONO' the FIFTEEN THOUSAND FOUR HUNDRED SIXTEEN DOLLARS AND TWENTY-FIVE CENTS ($15,416.25) to complete that amount by check for that amount on its current account in the Banco Crédito y Ahorro Ponceño. . . . 'EL COLONO,' namely, the partnership CLAVELL E IRIZARRY, binds itself and agrees to pay to 'LA CENTRAL' those THIRTY THOUSAND DOLLARS ($30,000) referred to above within a period of TEN YEARS counted as of the date hereof in annual instalments of not less than THREE THOUSAND DOLLARS ($3,000), together with interest accrued every year on those thirty thousand dollars at the rate of SIX PER CENT (6%) annually. . . ."

*C.* By the Eighteenth clause the parties stipulated that:

"CARLOS C. CLAVELL and COSME IRIZARRY shall be liable solidarily for all obligations herein contracted by the partnership CLAVELL E IRIZARRY, constituted by them, in favor of CORPORACIÓN AZUCARERA SAURÍ Y SUBIRÁ, and they bind themselves severally in their private capacity with the said Corporación to furnish all those guarantees, whether mortgage or pledge, which the CENTRAL may require whenever in the opinion of the CENTRAL they are necessary to secure the collection of all amounts which 'EL COLONO' may owe to it, as stated herein."

By deed No. 19 of September 13, 1954, executed before Notary Public Julio Viera Morales by appellee corporation Central Mercedita, Inc., appellants and third-party defendant Cosme Irizarry and his wife, the appellee assigned the said grinding contract to Central Mercedita, Inc., recognizing that in that moment the partnership in question and its managing partners Clavell and Irizarry owed to appellee, for the said financing, the sum of $27,000, plus interest. Central Mercedita bound itself to deduct and to pay annually, out of the amount of the liquidations of the partnership canes, and to deliver to appellee the annual instalments of $3,000, plus interest, as agreed upon in the seventeenth clause of deed No. 67 copied above, plus interest thereon.

*D.*  The Fourth stipulation of deed No. 19 provides in part that:

"The parties make it clear that the CROP-LOAN contract which the partnership Clavell e Irizarry has executed with Corporación Azucarera Saurí & Subirá has been rendered INEFFECTIVE, except for the provisions concerning Clavell's and Irizarry's outstanding debt to the said Corporación Azucarera Saurí & Subirá which on this day amounts to the aforesaid sum, a debt expressly recognized by the said debtors, as well as the personal guarantees of Carlos C. Clavell and Cosme Irizarry, those constituted as a preferred lien over the canes . . . all of which is in favor of Corporación Azucarera Saurí & Subirá . . . the said Corporación Azucarera Saurí & Subirá likewise waiving in favor of Central Mercedita, Inc. all its rights, regardless of their nature, in the said cane-grinding contract which it had entered into with the partnership Clavell e Irizarry, as it appears from the aforesaid contract."

*E.*  Subparagraphs (b) and (c) of the Additional Clauses of the said deed provide that:

"(b) In order to comply fully with the covenants and conditions herein established, the partnership Clavell e Irizarry and its managing partners or successors hereby instruct and empower the appearing party Central Mercedita, Inc. to set apart with preference, after making each year the final liquidation of its accounts with this firm and paying off the crop-loan credit, out of any surplus the amount of THREE THOUSAND DOLLARS ($3,000), plus interest accrued, to be paid accordingly to Corporación Azucarera Saurí & Subirá or to whomever represents its rights, and this obligation shall remain in force and shall be irrevocable during the entire life of this contract.

"(c) Nothing herein agreed upon shall be deemed to relieve the firm Clavell e Irizarry and its managing partners or their successors from paying promptly on maturity date the obligations herein contracted whenever for some circumstance there is no surplus in the liquidations of its canes to cover the obligations assumed thereunder by the partnership Clavell e Irizarry, its managing partners or successors with Corporación Azucarera Saurí & Subirá."

*F.* By deed No. 20 of February 12, 1954, executed before Notary Public Sergio León Lugo, Cosme Irizarry and his wife Caridad Franceschi, party of the first part, and Carlos C. Clavell, party of the second part, agreed to assign Irizarry's interest in the partnership in favor of Clavell, and to that effect they stipulated:

### "FOURTH

"It is agreed that COSME IRIZARRY SHALL CONTINUE TO HAVE, during the life of the contract for the grinding of cane and for agricultural advances embodied in deed number four, rather, sixty-four, of August four nineteen hundred and fifty-two, executed before Notary Leopoldo Tormes García in favor of Corporación Azucarera Saurí y Subirá, the solidary liability which he contracted under the EIGHTEENTH clause of said contract to which reference is made in the TENTH paragraph hereof."

*G.*                    "SECOND

"This assignment, conveyance and alienation . . . also includes any right, action and interest which COSME IRIZARRY has or may have in the contract for the grinding of cane and agricultural advances entered into by the partnership CLAVELL E IRIZARRY and by the same managing partners CARLOS C. CLAVELL and COSME IRIZARRY with Corporación Azucarera Saurí & Subirá. It also includes any right, action and interest which COSME IRIZARRY has or may have as managing partner and in his share in everything belonging or which may belong in the future to the said partnership, without any limitation or condition whatsoever."

*H.*                    "FIFTH

"CARLOS C. CLAVELL, as sole owner of everything which the agricultural civil partnership CLAVELL E IRIZARRY represents under the terms of this deed, binds himself to comply well and fully with all the stipulations embodied in deed number sixty-six of lease, sublease and assignment of purchase option . . . subrogating himself completely in the partnership CLAVELL E IRIZARRY for all purposes of compliance with all the provisions contained in that deed."

*I.*                              "SIXTH

"CARLOS C. CLAVELL likewise assumes any liability and binds himself to comply fully with the contract for the grinding of cane and for agricultural advances in favor of Corporación Saurí & Subirá, in accordance with the terms, clauses, conditions and stipulations embodied in deed number sixty-four of August four nineteen hundred and fifty-two, executed before Notary Leopoldo Tormes García, to which reference is made hereinabove."

*J.*                              "EIGHTH

"CARLOS C. CLAVELL assumes in its entirety the losses sustained in the sum of THIRTY-TWO THOUSAND THREE HUNDRED FIFTY-SIX DOLLARS AND SEVENTY-FIVE CENTS ($32,356.75) in the year nineteen hundred and fifty-two, thereby relieving COSME IRIZARRY from any liability, payment and claim, and he further assumes personally the losses sustained up to July thirty-one nineteen hundred and fifty-three in the sum of FORTY-EIGHT THOUSAND SIX HUNDRED FORTY-TWO DOLLARS AND EIGHTY-THREE CENTS ($48,642.83) in the partnership CLAVELL E IRIZARRY."

*K.*                              "NINTH

"The assignment, conveyance and alienation of the share, right, action and interest of COSME IRIZARRY in favor of CARLOS C. CLAVELL, as stated hereinabove, is made for the sum of TWENTY THOUSAND FOUR HUNDRED SEVENTY-FIVE DOLLARS ($20,475) . . . and for purposes of clarity it is stated that these TWENTY THOUSAND FOUR HUNDRED SEVENTY-FIVE DOLLARS ($20,475), which represents the price and consideration for the conveyance of any action, share, right and interest of COSME IRIZARRY in the partnership CLAVELL E IRIZARRY in favor of CARLOS C. CLAVELL, includes the FIFTEEN THOUSAND DOLLARS ($15,000) which COSME IRIZARRY contributed to the capital stock of the partnership CLAVELL E IRIZARRY and the other FIVE THOUSAND FOUR HUNDRED SEVENTY-FIVE DOLLARS ($5,475) for personal services rendered up to the present time by COSME IRIZARRY, as managing partner, to the partnership CLAVELL E IRIZARRY."

*L.*                              "TENTH

". . . And CARLOS C. CLAVELL expressly states that, as sole owner thereof, he assumes full responsibility for the continua-

tion of the business of the partnership CLAVELL E IRIZARRY, for all its property, rights, actions and obligations, *and relieves Cosme Irizarry from any liability for past as well as for future obligations, and also for any act, contract and relations of said partnership Clavell e Irizarry."* (Italics ours.)

*M.* "THIRTEENTH

"From and after the date hereof COSME IRIZARRY withdraws from any act relative to the partnership CLAVELL E IRIZARRY, with the exception of his responsibility under the contract for the grinding of cane and for agricultural advances with Corporación Azucarera Saurí y Subirá, and any negotiation, act or contract as well as the continuation of the business of the partnership CLAVELL E IRIZARRY shall be under the direction of its sole owner CARLOS C. CLAVELL."

*N.* By deed No. 168, executed on October 13, 1954 before Notary Public Sergio León Lugo, appellants dissolved the partnership setting forth in said deed that:

". . . Carlos C. Clavell expressly assuming, as sole owner thereof, any responsibility in the continuation of the business of the partnership 'CLAVELL E IRIZARRY,' for all its property, rights, actions and obligations, *thereby relieving Cosme Irizarry from any liability* for past as well as for future obligations and also for any act, contract and relations of said partnership 'CLAVELL E IRIZARRY,' including the assignment and any other clause or condition embodied in the said deed *number twenty of February twelve nineteen hundred and fifty-four,* and which are not included therein in the previous exposition of facts." (Italics ours.)

*O.* The Third paragraph of the preceding deed provides:

"That CARLOS C. CLAVELL being the sole owner of the property, rights, actions, as well as expressly binding himself under the agreement to assume all the obligations and contracts and other terms and conditions of the partnership 'CLAVELL E IRIZARRY,' as stated hereinabove, and the partnership 'CLAVELL E IRIZARRY' having been merged in him as sole owner, in accordance with the foregoing, he wishes to dissolve the same and does hereby set it forth herein under the following clauses:

## "FIRST

"As sole owner of the mercantile partnership 'CLAVELL E IRIZARRY' by purchase of all rights, actions, property and shares which corresponded therein to the other sole owner COSME IRIZARRY LUGO, as set forth in the second paragraph of this deed, all rights, property and ownership of property and obligations of all kinds against and in favor of the partnership 'CLAVELL E IRIZARRY' have been merged in CLAVELL; and it being no longer necessary to continue this partnership under the name and juridical personality, Carlos C. Clavell, as sole owner, proceeds to dissolve and hereby dissolves the said partnership for all legal purposes.

## "SECOND

"CARLOS C. CLAVELL states that the juridical personality as well as the ownership and dominion having been merged in him, and having acquired all the property, rights, actions, interest and obligations in favor of and against the said partnership 'CLAVELL E IRIZARRY,' he expressly binds himself to comply, as owner, with the assets and liabilities of said partnership, as well as with all obligations, in favor as well as against, contracted by it; and to comply further with all the legal requirements with which such partnership was bound to comply, in accordance with the deed of incorporation and subsequent acts and contracts.

## "THIRD

"The partnership 'CLAVELL E IRIZARRY' referred to herein being thus dissolved, its name as well as its juridical capacity as such partnership are completely extinguished for all legal purposes."

■ On August 24, 1956 appellee filed a complaint against appellants for collection of the remaining unpaid $21,000 of the principal of $30,000 of the crop-loan contract agreed upon in deed No. 67, plus interest as of August 4, 1956, inasmuch as on the latter date appellant Clavell failed to pay to appellee the $3,000 instalment and accrued interest up to that date. A pronouncement was also requested in the sense of ordering appellee to take possession of the lands described in the complaint and to proceed to cultivate, tend

and harvest the canes, process them into sugar, and to retain the proceeds of the sugar and of the compensation payments payable by the Secretary of Agriculture of the United States until appellee covers fully the amounts which appellant Clavell owes to it. Appellants answered disclaiming solidary liability and alleging that any responsibility which they may have is their responsibility as successors of the partnership and jointly with third-party defendant Irizarry, who continued to be responsible for the debt object of the complaint; that the debt has been reduced to $12,500; that neither this amount nor the $3,000 instalment referred to in the complaint are due, since by deed No. 19 it was agreed that the monthly instalments of the liquidations of the partnership canes would be payable by Central Mercedita, Inc., so that such instalment would not fall due until March 1, 1957.

On September 6, 1956 appellants filed a complaint against a third-party defendant praying that Central Mercedita, Inc. be ordered to pay to appellee corporation the $3,000 instalment plus interest thereon. By way of answer, the third-party defendant, Central Mercedita, alleged that it has not defaulted the payment of such instalments since, in addition to its obligation to pay the preferred credit of Production Credit Association (plaintiff corporation had already agreed to defer its crop-loan credit with the partnership in favor of the said association), the total liquidation between appellants and Central Mercedita, Inc. could not be made because the said compensation payment can not be liquidated until April of the following year; but that, nonetheless, on the basis of an estimate of the liquidation in question, the latter paid the sum of $4,277 covering the $3,000 instalment for the year 1956 and interest thereon. In its answer to the complaint against the third party, appellee denied the existence of novation, modification or extension of appellants' obligations to appellee, since the obligation of Central Mercedita, Inc. is additional to and did not alter appellants' obligation to comply promptly on their due date with their

obligations in favor of appellee. It alleged that appellee's contentions are in nowise affected by the third-party complaint to which we have just made reference, nor by the answer thereto of Central Mercedita, Inc.

On September 6, 1956 appellants also filed a cross-complaint, this time against Irizarry, alleging that the latter owed them one half of any unpaid sum of the said original $30,000 debt and of other payments of principal and interest made by appellants to appellee. In his answer, Irizarry disclaimed such responsibility in view of the clear terms of the afore-mentioned deed No. 20.

According to the statement of facts made by the trial court in its opinion of April 17, 1959, Central Mercedita paid the following amounts in this case: On September 7, 1956, the sum of $4,277; on May 14, 1957, $3,840; on June 16, 1958, $3,982.50; and on March 10, 1959, $3,530. The court held that: (1) on the filing date of the complaint in this case appellant Clavell owed appellee the sum of $21,000; (2) this sum represented an account stated as of August 4, 1956, when it fell due and an instalment thereof was not paid; (3) since neither the partnership nor Clavell complied with the terms of the crop-loan contract, the provision that appellee would defer its preferred lien which secured such debt was rendered ineffective; (4) Clavell has not neglected nor has practically abandoned completely the sugar-cane plantations so encumbered; (5) third-party defendant Irizarry does not owe any amount to appellants nor has any responsibility to the latter by reason of having been relieved therefrom, but his obligation to appellee subsists; (6) there was no novation of the original obligation to appellee assumed under deed No. 67 by the partnership and by Clavell and Irizarry, it being determined that the obligation assumed by Central Mercedita, Inc. by deed No. 19 to pay the instalments of the said debt covering the liquidations of the partnership canes constituted an additional guaranty. As a result, appellee's claim for the unpaid balance of the debt

which, on the basis of the payments made, has been reduced to $9,000, plus interest, costs, and $3,000 for attorney's fees, was sustained. It was further ordered that appellee should take possession of the farms and plantations in question and enter the same, cultivate, cut and harvest the canes, grind them and process them into sugar in Central Mercedita, Inc., and to use all the equipment which appellant Clavell has devoted to such purposes, and to dispose of such sugar, retaining for itself the liquidations or the amount thereof up to the sum due. Lastly, both cross-claims filed by appellants herein were dismissed.

Feeling aggrieved by this decision, appellants took this appeal and assigned eight errors alleging, briefly, that the trial court erred in its conclusions 1, 2, 5 and 6 above.

In our opinion, the errors assigned have not been committed and, therefore, the judgment rendered by the trial court in this case should be affirmed. We discuss below appellants' contentions set forth in their able brief in support of the errors assigned.

(1) It is first contended that the trial court erred in holding that Irizarry is not a debtor of nor has any responsibility to Clavell because he was expressly relieved by the latter from such responsibility. To this effect, it is insisted that by virtue of the Fourth and Thirteenth clauses of deed No. 20, Irizarry's solidary liability was not extinguished and that it has subsisted at all times (the text of these provisions is copied under the preceding paragraphs F and M). We have no doubt that this is correct as respects appellee, since Irizarry could not be relieved from such responsibility without the former's express and indubitable consent. However, the solidary guarantors, such as were in this case Clavell and Irizarry, could agree between themselves, as they did in fact agree by the Tenth clause (copied under paragraph L above) of deed No. 20, that Clavell would assume the partnership obligations relieving Irizarry from any liability *"for past as well as for future obligations, and also for any*

*act, contract and relations of said partnership Clavell e Iri-zarry.*" (Italics ours.) Subsequently, in deed No. 168 whereby the partnership was dissolved, Clavell ratifies himself as to that agreement (see text of the Second paragraph of that deed copied in paragraph N above), or at least he interpreted it that way, which is important in determining and clarifying that agreement. *Caballero* v. *Kogan*, 73 P.R.R. 617 (1952); *Atlas Commercial Co.* v. *Gómez*, 25 P.R.R. 828 (1917). There is no conflict between the provisions of the Fourth and Thirteenth clauses (copied in paragraphs F and M above) of deed No. 20 and the Fourth stipulation of deed No. 19 (copied in paragraph D above), on the one hand, and the Second, Fifth, Sixth, Eighth, Ninth and Tenth of deed No. 20 (copied in paragraphs G to L above, both inclusive), and the provisions of the Second and Third paragraphs of deed No. 168 on dissolution of partnership (copied in paragraphs N and O above), on the other hand. The former reaffirm Irizarry's guaranty to appellee, since Irizarry could not be relieved therefrom without appellee's consent, and the latter constitute Clavell's agreement to assume such guaranty thereby waiving the right granted to him by § 1098 of the Civil Code, 31 L.P.R.A. § 3109,[1] to claim from Irizarry the share corresponding to him of the payment made by Clavell, chargeable to the debt of both in favor of appellee. Hence, there does not exist the inconsistency alleged by appellants in the judgment of the trial court holding that Irizarry is not a debtor of Clavell nor has any responsibility to him, but that Irizarry's obligation to appellee subsists nonetheless. The affidavit sworn to by Irizarry on January 20,

---

[1] Section 1098 of the Civil Code provides:

"The payment made by any of the joint debtors extinguishes the obligation.

"The person who made the payment can only claim from his codebtors the shares pertaining to each one with interest on the amounts advanced.

"The nonfulfilment of the obligation by reason of the insolvency of a joint debtor shall be made good by his codebtors in proportion to the debt of each of them." (31 L.P.R.A. § 3109.)

1957, to the effect that he owes nothing to Clavell by reason of the amounts which the latter paid to appellee under the contract of advances and for the grinding of canes inasmuch as he was relieved from all of them by Clavell by deed No. 20, but that he was bound to appellee upon Clavell's failure to comply with the obligations assumed by the partnership and its managing partners, who are both of them, under the said contract, does not alter at all but, on the contrary, confirms the legal situation which we have just explained. The third-party defendant alleges in his brief, correctly in our opinion, that the payment of the sum of $20,475 which Clavell made to Irizarry for the assignment of his credits in the partnership as agreed upon by them in said deed No. 20 (see copy in paragraph K above), without deducting anything to Irizarry from any amount which Clavell might have paid to appellee up to the date of that deed, and without reserving on that date any amount which Irizarry was bound to pay on account of the $30,000 debt contracted by the partnership with appellee, shows that Clavell assumed exclusively the payment of that obligation notwithstanding Irizarry's recognition to continue bound by his guaranty of such debt in favor of appellee. 8-2 MANRESA, *Código Civil* 499-520 (5th ed. 1950).

(2) The errors marked Third to Sixth, both inclusive, refer to the question of demandability of the debt originally contracted by the partnership with appellee as a result of the instalment defaulted on August 4, 1956.

*P.* The Seventeenth clause of deed No. 67 whereby the contract for crop-loan advances and grinding of cane was executed, provides in the pertinent part as follows:

". . . 'EL COLONO,' namely, the partnership CLAVELL E IRIZARRY, binds itself and agrees to pay to 'LA CENTRAL' those THIRTY THOUSAND DOLLARS ($30,000) referred to above within a period of TEN YEARS counted as of the date hereof, in annual instalments of not less than THREE THOUSAND DOLLARS ($3,000),

together with interest accrued every year on those thirty thousand dollars at the rate of SIX PER CENT (6%) annually."

By the Fourth stipulation of deed No. 19 (copied in paragraph D above) the parties agreed that the crop-loan contract would be rendered ineffective *"except for the provisions concerning Clavell's and Irizarry's outstanding debt . . . a debt expressly recognized by the said debtors, as well as the personal guarantees of . . . Clavell and . . . Irizarry and those constituted as a preferred lien over the canes."* (Italics ours.) The additional clause (c) of said deed (copied in paragraph E above) makes clear that *"Nothing herein agreed upon shall be deemed to relieve the firm Clavell e Irizarry . . . from paying promptly on maturity date the obligations herein contracted."* (Italics ours.) Now then, which was the maturity date agreed upon, namely, of the annual instalments referred to in the provisions of the seventeenth clause of said deed (copied in paragraph P above)? Clavell himself answered this question upon testifying that the first $3,000 payment on account of the $30,000 crop-loan debt was tendered on August 4, 1953 (Tr. Ev. 127), and subsequently in his letter of August 5, 1955 addressed to appellee he sent $4,400 of principal and interest of the said debt, covering the instalment which fell due on August 4, 1955. Prior thereto, namely, on September 18, 1954, Clavell had paid the instalment which fell due on August 4 of that year, or a few days after deed No. 19 was executed. This date of August 4 of each year, the maturity date of the instalments in question, had been clarified previously in the First paragraph of deed No. 19 recognizing the debt contracted by the partnership in favor of appellee in *"the sum of Thirty Thousand Dollars ($30,000) which they promised to pay within a period of ten years in instalments of three thousand dollars payable on the 4th day of August of every year."* (Italics ours.) Appellants allege, however, that the method of payment of that debt was changed by virtue of the provisions of deed No. 19. It is contended that

the original guaranty was substituted by the guaranty of the liquidations of the canes to be ground by Central Mercedita pursuant to deed No. 19, since the maturity date of the instalments of such liquidations, which are not payable until March of the following year, was changed when the latter bound itself to pay the same, and, therefore, the original contract of agricultural advances and grinding was novated by deed No. 19. This argument is based on the Second clause of deed No. 19 which provides:

*Q.* "... [T]he said Central Mercedita, Inc., which is the owner of Central Mercedita situated in the ward of Sabanetas of Ponce, binds itself to assume the obligation to grind the canes which Corporación Azucarera Saurí & Subirá contracted with said partnership Clavell e Irizarry under the document copied hereinabove, and said partnership Clavell e Irizarry and its managing partners Carlos C. Clavell and Cosme Irizarry recognizing, as they do, that they owe at present to said Corporación Azucarera Saurí & Subirá, by way of advances, the sum of TWENTY-SEVEN THOUSAND DOLLARS ($27,000), plus interest accrued thereon up to this date, Central Mercedita, Inc. binds itself and agrees to deduct and to pay annually, out of the amount of the liquidations of the canes which said partnership Clavell e Irizarry or any of its managing partners Carlos C. Clavell and Cosme Irizarry may deliver for grinding at Central Mercedita, the three thousand dollars ($3,000) instalments which they bound themselves to pay to Corporación Azucarera Saurí & Subirá pursuant to the deed copied hereinabove, plus interest at the rate agreed upon which may accrue on the capital due until such indebtedness is paid in full."

The Fourth clause of that deed which is copied in paragraph D above is also invoked.

The evidence discloses several circumstances which not only defeat appellants' contention, but also compel us to formulate a conclusion to the contrary. In the first place, by virtue of said Fourth clause Clavell and Irizarry again recognized their debt to appellee, their personal guarantees thereof and the preferred lien over the canes agreed upon in deed No. 67. In the second place, it is well to ask, if the

practice in the business of planting and cultivating sugar cane is that the central collect its finance debt when the proceeds from cane grinding are liquidated, why were not the terms of deed No. 19 conformed to that situation?  It could be said that that being the practice, it was unnecessary to make in the deed an agreement in that sense.   However, the fact is that the circumstances in this case did not conform to such practice since the crop-loan creditor became a separate person, distinct and independent of the central. The creditor demanded and obtained from appellants not only the recognition of the crop-loan debt and the continuity of the personal guarantees and of the preferred lien over the canes, but also the payment of the instalments promptly on maturity date.   In harmony with this preceding demand, Clavell paid on September 18, 1954 the instalment which fell due immediately prior thereto and on August 5, 1955 the instalment which fell due the year following the execution of deed No. 19, that is, he paid them shortly after they became due.   It is therefore evident that the agreement of Central Mercedita to pay the instalments of the liquidations was an additional guarantee and not a substitution of those previously existing.

The fact that in said additional clause (c) of deed No. 19 it has been provided that nothing agreed upon in that deed would be deemed to relieve the partnership, or Clavell, or Irizarry from paying their obligations promptly on maturity whenever for some reason there is no surplus in the cane liquidations, does not buttress at all appellants' contention.   Nor is it in conflict with our conclusion that the parties did not agree on any change in the maturity date of the annual instalments of the debt in question.   This provision can not have a significance apart from the other provisions of deed No. 19 to the point of changing the method of payment of the instalments of the crop loan so as to compel appellee, as maintained by appellants, to demand payment from Central Mercedita, to prove that there was no surplus

in the liquidations, and to give notice thereof to debtors Clavell and Irizarry and then exercise its right to collect. The language of this provision should be construed in harmony with the other provisions of deed No. 19 which clarify that the maturity date of the instalments is August 4 of every year (First paragraph) and that *the crop-loan contract has been rendered ineffective except for the provisions concerning the outstanding debt* (Fourth clause). The latter necessarily means that not only is the debt subsistent, but also *the provisions in connection therewith*, such as the amortization thereof in annual instalments of $3,000, plus interest thereon and the maturity date of the latter on August 4 of each year. It is therefore clear that the clause in question did not operate to relieve the debtors from their crop-loan obligation to appellee, and, consequently, from the obligation thereunder to make sure that Central Mercedita paid the annual instalments out of the surplus of the liquidations, and if there was no surplus, to pay them themselves on maturity—August 4 of each year. This was done by Clavell in September 1954 and August 1955, but for reasons which do not appear from the record he failed to comply promptly with this obligation in 1956 to the point that payment was untimely tendered by Central Mercedita on September 7 of the latter year.

The record does not contain any express agreement declaring that appellants' obligation to pay the instalments on August 4 of each year was extinguished, nor is there any agreement wholly incompatible with such obligation. Therefore, there has been no novation nor modification as alleged. *Banco de Puerto Rico* v. *Arguinzoni*, 53 P.R.R. 159 (1938). Cf. *Dávila* v. *Torres*, 58 P.R.R. 880 (1941); *Bonet* v. *Heirs of Hernáiz*, 49 P.R.R. 96 (1935); *Iglesias* v. *Jefferson Standard Life Insurance Co.*, 45 P.R.R. 690 (1933).

■ (3) The seventh error which alleges that appellants should not have been ordered to pay $3,000 attorney's fees is frivolous, since such payment by the original debtors was

agreed upon as a penalty in the Seventeenth clause of deed No. 67 to enable the creditor, in the event of default in the payment of one of the $3,000 instalments of said crop-loan debt and to consider due all the outstanding instalments, to proceed, as it has done in this case, to demand payment of the debt "through the means it may deem advisable." Appellants entered into, recognized and assumed said agreement in the manner described hereinabove. The same subsisted as "respects the indebtedness" when the crop-loan contract was rendered ineffective by the provisions of the Fourth clause of deed No. 19.

■ (4) The eighth error assigned to the effect that the trial court ordered appellee to take possession of the farms and the plantations thereof involved in the transaction object of the controversy herein is also frivolous. The clause of deed No. 67 which authorizes such action is an essential part of the preferred lien over the canes agreed upon in that deed, and instead of being ineffective it was expressly agreed that it would continue in force by the provision of the Fourth clause of deed No. 19. Furthermore, it was admitted at the hearing of the case before this Court that the indebtedness object of this action had been paid in full.

For the reasons stated, the judgment rendered by the Superior Court, Ponce Part, on April 17, 1959 will be affirmed.